**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-20532

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES WILLIAM BOYLE and
ROBERT EUGENE SMITH,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
(91-CR-50-7 & 91-CR-50-6)

_____


August 28, 1996

Before KING, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]


Charles Boyle and Robert Smith were convicted of conspiring to obstruct a grand jury investigation and to mislead a person into withholding evidence from a grand jury, in violation of 18 U.S.C. §§ 371, 1503, and 1512. Smith was also convicted of conspiring to give false testimony to a grand jury, in violation of 18 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 1623.  We affirm.

I.

A.

Boyle and Smith were attorneys for Linda Ivey,[1] a distributor of sexually explicit materials who owns a network of adult bookstores in several states.  Smith helped Ivey establish an elaborate corporate structure for the management of her stores; Boyle represented Ivey in various legal matters.

In 1985, a grand jury in Tennessee was investigating possible violations of 18 U.S.C. § 1462, which bars the interstate transportation of obscene materials.  The grand jury subpoenaed the custodian of records of four bookstores in Memphis, seeking information about thirty-six videotapes.  On May 15, 1985, Boyle appeared before the grand jury.  He testified that he was appearing at Smith's request, that he was a representative of Praxis Management and the corporate owners of the four bookstores, and that the documents came from Praxis, a corporation that had physical possession of the bookstores' records.  He denied that Praxis was a management corporation for the stores.

In 1986, the grand jury issued a subpoena to Praxis.  On June 26, 1986, Boyle again appeared, at Smith's request, as

_____

[1] Linda Ivey has been referred to in the record as "Mary Jane Jenkins" and "Lydia Entratter."  We refer to her as Linda Ivey.

2

custodian of records for Praxis.[2]  He testified that some records were missing because Praxis no longer existed and the company had returned the records to its customers.  Boyle also qualified his testimony by stating that his knowledge of Praxis came from conversations with Smith.  Contradicting his earlier testimony, Boyle testified that Praxis had managed the bookstores.

Smith also testified before the grand jury, stating that Phoenix, which had replaced Praxis, provided bookkeeping services to various entities.  He claimed that former Praxis personnel were not working for Phoenix.  He denied that he was involved in the formation of Phoenix, that Phoenix and Praxis were the same companies, and that he knew who Phoenix's officers were.

In 1991, a federal grand jury in Houston issued subpoenas to Phoenix and other Ivey corporations, seeking account numbers and information regarding numerous accounts maintained by the target institutions.  The subpoena was specifically limited to accounts with banks or financial institutions.

Michael Cescon, Phoenix's comptroller, consulted Boyle and asked for account numbers for some offshore accounts.  Boyle knew the missing account numbers but did not provide them.  Instead, he told Cescon that "there wasn't any account numbers and just insert 'N/A' in its place."  Boyle also informed Cescon that the offshore

_____

[2] In the interim, Smith had modified the corporate structures so that Phoenix Management succeeded Praxis.  According to the government, everything but the name of the corporation stayed the same.

accounts were outside the scope of the subpoena when he told Cescon that he was not certain that the accounts were with banks or financial institutions.

B.

On April 9, 1991, the appellants and six other defendants were charged in an indictment arising out of the grand jury investigations. Count 12 charged them with conspiring to obstruct grand jury investigations.[3] The six other defendants were charged with racketeering and obscenity offenses.

The appellants initially were charged with (1) knowingly engaging in misleading conduct toward a witness in a federal grand jury to cause and induce the witness to withhold testimony, records, and/or documents from the grand jury in violation of 18 U.S.C. § 1512(b)(2)(A); (2) corruptly influencing, obstructing, impeding or attempting to influence, obstruct, or impede the administration of justice in violation of 18 U.S.C. § 1503; and (3) knowingly making a false material declaration before a grand jury in violation of 18 U.S.C. § 1623(a). The indictment included thirty-one overt acts in furtherance of the alleged conspiracies and a charge of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.[4] The government withdrew the § 371

---

[3] The district court severed count 12 on the appellants' motion.

[4] This portion of count 12 is sometimes referred to as "paragraph 3."

charge.

The appellants challenged the sufficiency of count 12, and the court ordered a bill of particulars. The government responded, and the defendants renewed their motion to dismiss count 12, or in the alternative to compel additional answers to the bill of particulars. The court denied both motions.

Following a jury trial, Boyle and Smith were convicted, under § 371, of conspiring to obstruct justice (18 U.S.C. § 1503) and to mislead a person into withholding evidence from a grand jury (18 U.S.C. § 1512). Smith was also convicted, as part of the same count, of conspiring to give false testimony to a grand jury (18 U.S.C. § 1623).

II.

The defendants contend that the indictment failed adequately to apprise them of the conspiracy offenses with which they were charged. Their specific complaint is that the indictment and the bill of particulars failed to describe how they actually had violated the underlying substantive offenses. They assert that the bill of particulars was insufficient because it listed seventy-eight instances of false, incomplete, or misleading testimony without explaining why the testimony was false.

We review the sufficiency of the indictment *de novo*. *United States v. Flores*, 63 F.3d 1342, 1360 (5th Cir. 1995), *petition for*

5

*cert. filed* (Mar. 14, 1996) (No. 95-8346).   An indictment is sufficient if it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed; and (3) provides him with a double jeopardy defense against future prosecution.  *Id.*

A conspiracy indictment is sufficient if it sets out an unlawful agreement and the commission of at least one overt act by at least one of the conspirators.  The conspiracy, rather than the accomplishment of its underlying objectives, is the gravamen of the offense, so it is not necessary that the object of the conspiracy be described in the detail that would be required to charge a violation of the substantive offense. *United States v. Ivey*, 949 F.2d 759, 765 (5th Cir. 1991), *cert. denied*, 506 U.S. 819 (1992); *United States v. Evans*, 572 F.2d 455, 483 (5th Cir.), *cert. denied*, 439 U.S. 870 (1978).

Count 12 was sufficient to provide the defendants with notice of the charges against them.  They were not entitled to an indictment that provided a breakdown of how they violated each substantive crime or the evidence the government intended to produce.  *Ivey*, 949 F.2d at 765; *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986) ("Moreover, a defendant's constitutional *right* to know the offense with which he is charged must be distinguished from a defendant's *need* to know the evidentiary details establishing the facts of such offense, which can be

provided through a motion for a bill of particulars."). The indictment alleged a conspiracy to commit three substantive crimes; it generally described an agreement between the defendants to conceal the identities of the true owners of the obscene bookstores; it contained a description of the various grand jury investigations and a general account of the conspiracy's goal to withhold specific information from the investigators; and it contained thirty-one overt acts, including allegations that Boyle and Smith testified falsely or instructed others to do so.

The defendants failed to demonstrate that the district court abused its discretion in denying their motion for further elaboration on the bill of particulars. *See United States v. Johnson*, 575 F.2d 1347, 1357 (5th Cir. 1978), *cert. denied*, 440 U.S. 907 (1979). Like their challenge to the sufficiency of the indictment, the challenge to the bill of particulars is based on a claim that the government did not adequately explain how their actions violated the substantive crimes they are accused of conspiring to violate. Without more, the defendants have failed to show that the district court abused its discretion in denying their request for further elaboration.

III.

We also reject the defendants' closely related argument that they were denied their Sixth Amendment right to a unanimous verdict

because the indictment included multiple alleged conspiracy offenses in a single count. It is settled law in this circuit that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Cooper*, 966 F.2d 936, 939 (5th Cir.) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)), *cert. denied*, 506 U.S. 980 (1992).

Count 12 alleged one conspiracy, a conspiracy to obstruct grand jury investigations of Ivey's illicit activities. That the conspiracy entailed more than one crime does not turn a single conspiracy into multiple conspiracies. *Id.* To that extent, cases cited by the defendants are distinguishable. *See, e.g., United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) (finding that the count was duplicitous because it charged two distinct conspiracies, one to defraud the United States Navy and a second to obstruct a grand jury investigation of the fraud).

IV.

The defendants contend that various acts by the court and the government impermissibly amended the indictment. They assert three instances of constructive amendment. The first involves the bill of particulars. The defendants argue that the bill of particulars included two allegations that were not included in the indictment.

8

The second instance involves the redaction of the overt acts from the indictment.  The defendants argue that the removal of the overt acts, in combination with the government's closing remarks, the court's instructions regarding overt acts, and the court's response to the jury's question resulted in a conviction premised on overt acts that were not alleged in the indictment.  The third instance involves the submission of paragraph three of the indictment, which had been dismissed, to the jury.

Once an indictment has been returned, its charge may not be broadened through amendment except by grand jury.  *Stirone v. United States*, 361 U.S. 212 (1960); *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993); *United States v. Baytank*, 934 F.2d 599, 606 (1991).  As we recognized in *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984):

> *Stirone* requires the courts distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine.  The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged.  In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment.  If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant." [Citations omitted.]

The defendants have failed to prove that the bill of particu-

9

lars constructively amended the indictment. The original indict-
ment charged a conspiracy to commit three felonies, one of which
was corruptly to influence, obstruct, and impede the due adminis-
tration of justice. In response to the request for more particu-
larized facts, the government included allegations that the
defendants' conspiratorial objectives included presenting incom-
plete testimony and incomplete facts to the jury. The government's
response did not add a new charge, but rather provided particular-
ized examples of the type of conduct the defendants were charged
with conspiring to commit.

We also find no reversible error in the second class of
alleged constructive amendments. The defendants' basic argument is
that redaction of the overt acts opened the door to a conviction
based on overt acts that were not alleged in the indictment. The
prosecutor's closing arguments, the court's jury charge, and the
court's response to the jury question are the only instances as to
which redaction of the overt acts could have resulted in the
alleged expansion of the indictment.

The defendants failed to object to the redaction of the overt
acts, so we review for plain error. *See United States v.
Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert.
denied*, 115 S. Ct. 1266 (1995). The alleged errors, if they were
errors, were not plain at the time of trial.

A court is not required to submit the indictment to the jury;

10

the decision to do so is within its broad discretion. *United States v. Haynes*, 573 F.2d 236, 241 (5th Cir.), *cert. denied*, 439 U.S. 850 (1978). Moreover, a conviction may be based on an overt act that is not pled as part of the conspiracy if the overt act is one that occurs during the life of the conspiracy charged.[5]

Given this caselaw, we cannot say that providing the jury with a copy of the indictment and redacting the overt acts was plainly an act of constructive amendment. Nor can we say that the court committed plain error when it allowed for the possibility that the defendants would be convicted on overt acts that occurred during the life of the conspiracy but were not listed in the indictment. Even assuming error, we do not find that allowing the convictions to stand would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

We also reject the argument that submitting paragraph three to the jury constructively amended the indictment. The defendants have conceded that they failed to object to the submission of paragraph three. The court's clerical error does not seriously affect the fairness, integrity, or public reputation of judicial

---

[5] *United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986) (holding that the government is not limited to the overt acts pleaded in proving a conspiracy, but may rely on other overt acts of the conspirators during the life of the conspiracy), *cert. denied*, 480 U.S. 949, and *cert. denied*, 480 U.S. 950 (1987); *Johnson*, 575 F.2d at 1357 (recognizing the rule that a prejudicial variance does not occur when the government relies on overt acts other than those alleged in the indictment or bill of particulars); *United States v. Elliott*, 571 F.2d 880, 911 (5th Cir.), *cert. denied*, 439 U.S. 953 (1978); *United States v. Perez*, 489 F.2d 51, 70 (5th Cir.), *cert. denied*, 417 U.S. 945 (1974).

proceedings.  *See Calverley*, 37 F.3d at 162-64.

V.

The defendants next argue that the district court denied them a fair trial by intimidating Andrew Grod and Michael Cescon into giving damaging testimony and by limiting cross examination of the two witnesses.  We discuss each alleged error in turn.

A.

When a defendant asserts judicial misconduct, our role

> is to determine whether the [district court's] behavior
> was so prejudicial that it denied the defendant a fair,
> as opposed to a perfect, trial.  To rise to the level of
> constitutional error, the district [court's] actions,
> viewed as a whole, must amount to an intervention that
> could have led the jury to a predisposition of guilt by
> improperly confusing the functions of judge and prosecu-
> tor.  The [court's] intervention in the proceedings must
> be quantitatively and qualitatively substantial to meet
> this test.

*United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994) (citations omitted), *cert. denied*, 115 S. Ct. 113, *and cert. denied*, 115 S. Ct. 1825 (1995).  *See also Flores*, 63 F.3d at 1360). The court's statements to Grod did not substantially lead to a predisposition of guilt by the jury.  The statements took place outside the presence of the jury, limiting any prejudice.  *United States v. Samak*, 7 F.3d 1196 (5th Cir. 1993) (per curiam) (noting that comments made outside the presence of the jury could not lead to a predisposition of guilt by the jury).

12

The defendants' real complaint is that the court's intervention led to the damaging testimony.  A court is allowed to admonish a witness who is evasive, however.  Absent evidence that the court's comments caused Grod to lie on the stand, the defendants cannot complain of prejudice when the court simply instructed a witness to provide concise and responsive testimony.

B.

Defendants also complain that the court limited cross-examination of Grod and Cescon.  We review rulings on the admissibility of evidence and restrictions on the scope of cross examination for abuse of discretion.  *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995).

The court did not abuse its discretion by allowing Grod to testify about foreign bank accounts.  The status of the offshore accounts was relevant to the charge that Boyle had misled Grod by advising him that the accounts were not bank accounts.  Grod, an accountant who previously had testified that the offshore accounts were bank accounts, was qualified to give opinion testimony regarding what types of financial institutions controlled the offshore accounts.  Moreover, the court was within its discretion in refusing to allow Boyle's attorney to explain Grod's testimony; the attorney's statements were not evidence and were best left for closing argument.

13

The court did not abuse its discretion by limiting the cross-examination of Cescon. On direct examination, Cescon testified that he did not know why funds from Ivey's offshore accounts had passed through Bankers Trust Company. On cross, Boyle's attorney made a bald-faced attempt to change Cescon's answer by attempting to elicit an affirmative answer to an explanation of why the funds had passed through Bankers Trust. The court, outside the presence of the jury, advised Boyle's attorney that he could not testify on behalf of Cescon and that Cescon would be perjuring himself if he changed his answer. None of the court's actions could be viewed as an abuse of discretion. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1985).

## VI.

### A.

The defendants argue that the district court erred in its response to a note sent by the jury during its deliberations. The jury asked, "Is the 'Count Twelve' the overt acts that we deliberate. If not what is 'Count Twelve's' purpose. Can we get 6 more copies of the Count 12." The court responded, "The overt acts are those set forth in the indictment and arguments of the attorneys. Count 12 is the allegation of acts in violation of the various statutes set forth therein."

The jury made no request for elaboration. The defendants

14

contend that the question demonstrated the jury's confusion over the overt acts and that the court's answer furthered that confusion by referring the jury to count 12, which did not describe any overt acts.

The district court is granted broad discretion in responding to jury questions. *United States v. Duvall*, 846 F.2d 966, 977 (5th Cir. 1988). When a deliberating jury expresses confusion and difficulty, the court must clear that confusion away with "concrete accuracy." *United States v. Stevens*, 38 F.3d 167, 169-70 (5th Cir. 1994). We must ask whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it. *Id*. at 170. "There is nothing wrong in responding in a narrow fashion allowing a jury to decide if the answer is responsive." *United States v. Stowell*, 947 F.2d 1251, 1257 (5th Cir. 1991), *cert. denied*, 503 U.S. 908, *and cert. denied*, 506 U.S. 902 (1992).

## B.

The jury's question concerning the overt acts obviously signaled its confusion on this point. A jury's expression of confusion after deliberation imposes a heightened duty on the district court to eliminate that confusion. "When a deliberating jury expresses confusion and difficulty over an issue submitted to

15

it, the trial court's task is to clear that confusion away with 'concrete accuracy.'" *Stevens*, 38 F.3d at 169-70. This task requires extreme care:

> Under those circumstances, a trial judge must be acutely sensitive to the probability that the jurors will listen to his additional instructions with particular interest and will rely more heavily on such instructions than on any single portion of the original charge. Thus, the court must exercise special care to see that inaccuracy or imbalance in the supplemental instructions do not poison an otherwise healthy trial.

*United States v. Carter*, 491 F.2d 625, 633 (5th Cir. 1974). While the district court has wide latitude in crafting responses to the jury's questions, the supplemental instruction must be reasonably responsive in clearing that confusion with "concrete accuracy." *Stevens*, 38 F.3d at 170.

The government would have us place the burden of clearing up the confusion on the jury, stating that "[i]f the district court's response was unhelpful, the jury could have asked the court one or more additional clarifying questions." In support of this proposition, the government cites *Stowell*.

In *Stowell*, the jury sent out a note during deliberations asking, "Can any defendant whom we find was not entrapped become an ignorant pawn of the government and in turn entrap another defendant?" 947 F.2d at 1257. The court responded with a simple "Yes." *Id.* The defendants in *Stowell* argued that the response was inadequate because "the jury essentially asked for a clarification on the applicable burden of proof." *Id.* We determined that the

16

response was adequate because it was correct and concise, concluding, "[t]here is nothing wrong in responding in a narrow fashion allowing the jury to decide if the answer is responsive." *Id.*

*Stowell* is distinguishable from the instant case. In *Stowell*, the jury's question called for a simple "yes" or "no" answer. Neither party disputed that the answer given was correct, but the defendants argued that the court should have elaborated more. *Id.*

In the case at bar, the answer called for was more than 'yes' or 'no,' and the court's answer was incorrect and confusing. The court referred the jury to the indictment for the overt acts, even though the court had redacted the overt acts from the indictment given to the jury. The court referred the jury to the closing arguments, which, while discussing various acts, did not label them "overt acts." The issue is not, as in *Stowell*, whether the court should have elaborated more in its answer even though it was correct, but whether, instead, the court's answer was correct at all.

## C.

Although the answer to the jury's question was erroneous, the defendants did not object. Thus, we review for plain error only. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993); *Calverley*, 37 F.3d at 162. Plain error is not reversible unless it affects the defendants' substantial rights. *Olano*, 507 U.S. at 732;

17

*Calverley*, 37 F.3d at 164.

As we stated in *Calverley*, in most cases, for an error to affect substantial rights, "it must affect the outcome of the proceeding." 37 F.3d at 164. The defendants have the burden of persuasion. *Id.* Thus, for the error to justify reversal under plain error review, the defendants must establish that if the court had properly instructed the jury, they would have been acquitted. The defendants have not made this showing.

## VII.

The defendants challenge the adequacy of the jury instructions. We afford the district court substantial latitude in framing instructions to the jury. *United States v. Smithson,* 49 F.3d 138, 142 (5th Cir. 1995). The refusal to give a requested instruction is reviewed for abuse of discretion. *Id*. When reviewing challenges to instructions, we take into account the court's charge as a whole and the surrounding context of the trial, including arguments made to the jury. *Flores*, 63 F.2d at 1374. To prevail, the defendants must demonstrate that the requested instruction "(1) was a correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *Smithson*, 49 F.3d at 142.

18

The defendants contend that the district court erred by redacting the overt acts alleged in the indictment and by deleting the provision in the pattern jury instruction that refers to the overt acts in the indictment.[6] The defendants submitted six different jury charges that referred to overt acts.[7] The

(continued...)

---

[6] The court deleted the following paragraph from the *Fifth Circuit Pattern Jury Instructions*, § 2.21 (1990):

**Third**: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

[7] The first proposed charge relating to overt acts stated the following:

Mere knowledge or approval, without participation, does not make one a party to a conspiracy. Mere association does not establish a conspiracy. There must be intentional participation in the conspiracy with a view to the furtherance of the common design and purpose to violate the law. The doing of an act which may unknowingly further any such conspiracy or without the intent to further such conspiracy is not sufficient.

The second proposed charge stated, in pertinent part:

The government must prove the following three (3) essential elements beyond a reasonable doubt:

. . .

Two: At some time during the existence or life [sic] the conspiracy, one of the Defendants knowingly performed one of the overt acts charged in the Indictment in order to further or advance the purpose of the agreement to violate the law. . . .

The third proposed charge stated:

The essential elements of a conspiracy are an agreement by two or more persons to combine efforts for an illegal purpose and an overt act by one of the members in furtherance of the agreement to violate the law.

The fourth proposed charge stated, in pertinent part:

The evidence before the jury must show beyond a reasonable doubt . . . that one of the Defendants engaged in an overt act to further the illegal goal of the conspiracy. . . . the doing of an act which was not intended to further the conspiracy does not make someone a

defendants contend that the deviation from their proposed charges impaired their ability to show that all the acts charged by the grand jury were not intended to further an unlawful agreement or were never proven.

The district court did not abuse its discretion in submitting jury instructions without the overt acts alleged in the indictment. The court's instructions to the jury *did* include a statement that the overt acts must be in furtherance of the conspiracy.  To that extent, the defendants' requested charge was substantially covered by the court's charge.

At oral argument, the defendants added a new twist to their theory.  While admitting that the court's charge did indeed include a statement that the act must be "in furtherance of the conspiracy," they claimed the charge was deficient because it did not say that the overt act must be committed by the conspirator or be

---

[7](...continued)
member of the conspiracy or a conspirator.

The next charge relating to over acts stated:

> Evidence has been received in this case that certain persons, who are alleged in the Indictment to be a co-conspirator have done or said things during the existence or life of the alleged conspiracy in order to further or advance its goal(s). . . . Before even considering such acts or statements you must find beyond a reasonable doubt that a conspiracy existed, that the person was a knowing member of the conspiracy and that the act or statement was made in furtherance of the conspiracy.

The final charge to discuss overt acts contained the following:

> The government must prove beyond a reasonable doubt that one of the members to the conspiracy knowingly performed at least one overt act and that this overt act was performed during the existence or life of the conspiracy and was done with the specific intent to further [sic] object of the conspiracy.

20

committed during the time of the conspiracy.

In addition to being untimely, the argument fails because defendants have not explained how this seriously impaired their ability to present a defense.  There is no indication that the government relied on acts by anyone other than the defendants or acts that were outside the time frame of the co-conspirators' agreement.

The defendants' second argument is that the court's instructions on the overt act requirement amounted to an abuse of discretion because the court essentially instructed the jury to find the defendants guilty.  The court's instructions substantially conform to the instructions the defendants contend would be correct.

The court provided the jury with a special verdict form,[8] a

---

[8] Following the guilty/not guilty question, the special verdict contained the following questions:

> If you find the defendant guilty, answer the following questions:
> 1.   What statutes do you find the defendant was guilty of conspiring to violate?
>
> > A.    Knowingly engaging in misleading conduct toward another person with the intent to cause and induce another person to withhold testimony, records, documents, or other objects from a federal grand jury
> >
> > B.    Corruptly influencing, obstructing, or impeding, or endeavoring to influence, obstruct, or impede the due administration of justice
> >
> > C.    Knowingly making a false material declaration under oath before a grand jury.

(continued...)

21

copy of the indictment with the alleged overt acts redacted, and

the following verbal instruction:

> The form verdict starts out with the name of the defendant and determination of whether that defendant is guilty or not guilty.  Obviously, if a defendant is not guilty, you don't need to proceed with answering or filling in the balance of this.  You simply need to turn it over and have the foreperson sign and date the document.
>
> If you find any defendant guilty, that is, if you find that this conspiracy existed as the government has alleged existed, then you must proceed to the A, B, C sections and each of you, or all of you, must unanimously agree.  If you find any one of these existed, you must all agree not only that the section is the one that you agree was violated unanimously, but you must also agree on the act that you believe constitutes the violation of that particular section. And that's why you have the section two over here where it says "did you agree unanimously on a specific overt act which was committed in furtherance of the conspiracy to commit each of the offenses you checked on question one above?"  And you will answer that "yes."  That has to be answered "yes," and the reason it has to be answered "yes" is because you should not fill in the space if you don't have a unanimous agreement as to the violation.
>
> Now, if you have a violation, if you believe that there is a conspiracy as toSSand cannot agreeSSwell, let me justSSwell, let's start that over.
>
> You must unanimously agree upon the statute that you believeSSor statutesSSit could be A, B, C or it could be A or B or C.  There is a combination of ways this could occur.
>
> If you agree unanimously upon the statute, let's go ahead and check that bloc, as agreeing if you reach agreement on that, assuming that you believe and find the

---

[8](...continued)
> 2.    Did you agree unanimously on at least one specific overt act which was committed in furtherance of the conspiracy to commit each of the offenses you checked in question 1 above?

22

defendants guilty, and then proceed to the second question which tells you then, do you agree upon a specific act, the overt act, that constitutes the violation of the statute. And if I've confused you totally, then you can go back and read the instructions.

Taken as a whole, the court's instructions provided the jury with sufficient guidance. The contention that the verbal instruction amounted to an instruction that the jury find the defendants guilty is based on creative underlining.

VIII.

We reject the argument that § 1503[9] is void for vagueness. The defendants cannot raise a facial challenge to the constitutionality of § 1503.[10] Thus, all we must consider is an as-applied

---

[9] Section 1503 is reprinted below, with the omnibus clause italicized.

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate . . . or any . . . juror, or officer in or of any court of the Untied States, . . . in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, . . . or on account of his testifying or having testified to any matter pending therein, or injures any such . . . juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer [or] magistrate . . . in his person or property on account of the performance of his official duties, *or corruptly or by threats or force, or by any threatening letter of communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice* [violates this statute].

[10] *United States v. Howard*, 569 F.2d 1331, 1336 n.9 (5th Cir.) (limiting challenges to § 1503 for vagueness to as-applied challenges), *cert. denied*, 439 U.S. 834 (1978). *See also United States v. McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990) ("Vagueness challenges outside the context of the First Amendment are to be examined
(continued...)

23

challenge.

A penal statute is not unconstitutionally vague if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct which a defendant is charged." *United States v. National Dairy Corp.*, 372 U.S. 29, 32-33 (1962) (citations omitted).

The term "corruptly" is used in § 1503 in its ordinary sense, describing "[a]n act done with an intent to give some advantage inconsistent with the official duty and rights of others. . . ." *United States v. Reeves*, 752 F.2d 995, 998 (5th Cir. 1985) (citing *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)), *cert. denied*, 479 U.S. 837 (1986). The defendants' conduct sought to give their clients an advantage inconsistent with the duty to fully inform the grand jury. Thus, the conduct falls squarely within the ordinary meaning of § 1503, giving them notice that their acts were

_____

[10](...continued)
in light of the facts of the case, on an as-applied basis.").

24

criminalized.  *United States v. Harriss*, 347 U.S. 612, 618 (1954) (stating that "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise").

The defendants' reliance on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), *cert. denied*, 506 U.S. 1021 (1992), is misplaced.  The statute at issue in *Poindexter* was 18 U.S.C. § 1505.[11]  *Poindexter* is distinguishable because the alleged conductSSlying to Congress without the motive of gaining an advantage for oneself or anotherSSdid not fall within the core meaning of "corruptly."  For this reason, and because judicial interpretation of the statute did not provide guidance to the word's meaning, the court concluded that the defendant was not on sufficient notice that his conduct was prohibited by the statute. *See id*. at 379-86.  In fact, the *Poindexter* court specifically recognized that the conduct in the case *sub judice* falls within the core meaning of "corruptly" and would not give rise to a void-for-vagueness challenge.  951 F.2d at 385-86.

---

[11]  18 U.S.C. § 1505 states in pertinent part:

> Whoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House [violates the statute].

This provision of the statute is referred to as the omnibus clause.

IX.

We affirm a jury verdict if a reasonable trier of fact could conclude that the elements of the offense were established beyond a reasonable doubt, viewing all evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences to support the verdict. The evidence need not exclude every reasonable possibility of innocence. *United States v. Faulkner*, 17 F.3d 745, 768 (5th Cir.), *cert. denied*, 115 S. Ct. 193 (1994).

The crux of Boyle's challenge is that the conduct that he allegedly conspired to engage in would not violate § 1503 or § 1512. With regard to § 1512, Boyle contends that his interaction with potential grand jury witnesses would not violate the statute because he did not engage in misleading conduct toward a witness. Boyle also contends that his conduct could not violate § 1503 because his behavior was not corrupt.

There was sufficient evidence to support the jury's determination that Boyle misled Cescon. Before responding to the subpoena, Cescon conferred with Ivey and Smith. As a result of those conversations, he later spoke with Boyle and asked him for the account numbers. Boyle told Cescon that the foreign accounts may not be bank accounts. When Cescon asked Boyle for the account numbers, Boyle lied and told him that he did not know them.

Those two statements alone were sufficient to support the

26

verdict. In addition, the evidence of a pre-existing conspiracy, and Cescon's attempts at trial to claim that the accounts may not have been bank accounts, further supported a conclusion that Boyle mislead Cescon about the nature of the accounts, and the purpose of doing so was to convince Cescon to omit the account numbers.

Boyle's claim that his behavior was not "corrupt" under § 1503 is also without merit. There was sufficient evidence that Boyle, as Ivey's lawyer, engaged in an attempt to impede the due administration of justice[12] for the purpose of gaining an advantage for his clients. *See Reeves*, 752 F.2d at 998.[13]

X.

The defendants challenge the three-level enhancement under U.S.S.G. § 2J1.2(b)(2) (1992), which applies where "the offense resulted in substantial interference with the administration of justice." The commentary defines "substantial interference" to include "the unnecessary expenditures of substantial governmental or court resources." U.S.S.G. § 2J1.2, comment, note 1.

We review the district court's application of the sentencing

---

[12] Boyle does not challenge the sufficiency of the evidence that he impeded the due administration of justice. His only claim is that he did not do so corruptly.

[13] The decision in *United States v. Aguilar*, 21 F.3d 1475, 1484 (9th Cir. 1994), *aff'd on other grounds*, 115 S. Ct. 2357 (1995), is inapplicable, as the Ninth Circuit accepts the *ejusdem generis* interpretation of § 1503, which limits its reach to conduct influencing another person. This circuit has rejected that interpretation. *See United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir.), *cert. denied*, 439 U.S. 834 (1978).

27

guidelines *de novo* and findings of fact for clear error. *United States v. Harrington*, 82 F.3d 83, 86 (5th Cir. 1996). Due deference is given to the district court's application of the guidelines to the facts. *Id*.

Boyle's specific complaint is that the court did not make a specific finding that his conversation with Cescon caused an "unnecessary expenditure of substantial governmental or court resources." Boyle is incorrect. The court specifically relied on a presentence report ("PSR") that made such a finding. A PSR "generally bears sufficient indicia of reliability to be construed as evidence by the trial judge in making the factual determinations required by the sentencing guidelines." *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990). In addition, the court expressly found that Cescon's conduct led to a delay in both the investigation and the criminal trial.

Smith also has failed to demonstrate that the findings were clearly erroneous. Smith argues that his enhancement was based on the incorrect finding that Smith had spoken with Grod and Cescon and had testified to the Houston grand jury.

Smith has failed to demonstrate that the court's conclusion that his conduct led to substantial interference is materially false. There was sufficient evidence to support a finding that Smith and Ivey coordinated the entire conspiracy, including Boyle's discussion with Cescon. In fact, Boyle's testimony that he

28

appeared at the grand jury at Smith's request was sufficient to support an inference that Smith and Boyle worked closely together.

Thus, a conclusion that Smith, through Boyle, attempted to influence Cescon was not clear error. Moreover, the court properly relied on the PSR, and the fact that the conspiracy as a whole resulted in a substantial interference with the administration of justice, to justify Smith's enhancement.

AFFIRMED.